UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW GLOWACKI,

PLAINTIFF, CASE NO.: 8:24-cv-209

V.

LIGHTSHARE BEHAVIORAL
WELLNESS & RECOVERY, INC.,

DEFENDANT.
_________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, ANDREW GLOWACKI ("Plaintiff"), by and through undersigned counsel, and brings this action against Defendant, LIGHTSHARE BEHAVIORAL WELLNESS & RECOVERY, INC. ("Defendant"), pursuant to the whistleblower retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) and Florida Private Sector Whistleblower's Act "FWA", Fla. Stat. Ch. 448.101-.105 ("FWA").

1. This Court has jurisdiction pursuant to 31 U.S.C. § 3732(a).

2. The venue is proper in the Middle District of Florida because the Defendant employed the Plaintiff in Sarasota County, Florida, where the Defendant maintains its headquarters in the Middle District of Florida.

**PARTIES**

3. The Defendant is a Florida not-for-profit corporation and conducts business in Sarasota County, Florida, where the Plaintiff worked for the Defendant.

4. Jurisdiction is proper and appropriate in this Court over Defendant pursuant to the False Claims Act ("FCA"), 28 U.S.C. § 3732(a), because Defendant resides in this Judicial District. In addition, Defendant may be found in this Judicial District.

5. The Plaintiff is a citizen of the United States and resident of Sarasota County, Florida.

6. The Plaintiff has retained the Malatesta Law Office to represent him in this matter and has agreed to pay the firm a reasonable attorney's fee for its services.

**GENERAL ALLEGATIONS**

7. The Defendant provides various medical services for individuals suffering from mental health and addiction disorders.

8. Defendant regularly submits invoices or causes invoices to be submitted to Medicare and Medicaid for the services it provides to patients.

9. Defendant regularly violates the FCA, Florida False Claims Act ("FFCA"), § 68.082, and Chapter 817 by engaging in the following: (a) billing Medicare, Medicaid, and various State and Federal Grant Programs ("Grants") above and beyond the Defendant's "usual charges" for various services in violation of 42 USC §1320a-7(b)(6)(A); (b) improperly submitting requests for payment to Medicare, Medicaid and/or Grants as the primary payor when they were the secondary or third payor on claims; (c) falsely billing Medicare, Medicaid, private health insurance carriers and/or Grants for services completed by uncredentialed providers under the name of credentialed providers who did not provide the service; and (d) falsely

claiming requests for payments submitted to Medicare, Medicaid, private health insurance carriers and/or Grants that certain services were completed under the supervision of a qualified provider.

10. Defendant hired Plaintiff on September 7, 2023 as the Director of Revenue Cycle Management.

11. Defendant told Plaintiff that it intended to bring its claims and billing process in house. Plaintiff would be responsible for assisting with the transition and managing the day as Director of Revenue Cycle Management.

12. Plaintiff began his orientation on September 11, 2023. Plaintiff began familiarizing himself with the Defendant's billing systems.

13. Plaintiff immediately noticed that Defendant was billing different rates for the same service to different providers.

14. On September 12, 2023, Plaintiff forwarded the following email to Casey Collier ("Collier"), LMHC (Licensed Mental Health Counselor), who worked as an Electronic Health Record Administrator, and Tina Molick ("Molick"), Vice President of Finance:

> *As discussed earlier, you had mentioned we do not bill above Medicare allowable that we are billing per the fee schedule per carrier. I haven't seen this way before whereas providers bill one rate for all carriers usually 1, 2 or 3 times Medicare allowable. Usually a flat round number amount.*
> *Example*
> *99213 EM code pays between 100 and 150 depending on the carrier fee schedule. So as a rule of thumb you would bill $250.00 to $300.00 across the board for all carriers adjusting to the fee schedule. Now my understanding on this i[s] 3 fold. 1. It covers all fee schedules payment amounts. 2. It offers room for fee negotiations as far as cost of living and supply increase when contracts come up for renewal. 3rd*

*and most importantly we are not allows to charge carriers different rates for the same services.*
*If Medicare finds out that[] will be an issue and will be reported to the OIG. If we charge Medicaid less for the same service and Medicare finds out it can lead to an investigation. Medicaid is secondary to Medicare if a patient has duel coverage so the initial claim has the Medicare rate whenlled?? to Medicaid as secondary, but if they only have Medica[i]d then are we billing a lower rate based off Medicaid fee schedule as it is primary without a secondary carrier. Either way we need to make our charges uniform to all payers and bill at least 2xs Medicare allowable to ensure it's above the commercial payers contractual rates and adjust off accordingly. []*
*What this basically means is that if CMS discovers you've been offering discounts, it'll assume that it has been overpaying you, and it'll reprocess your claims by reducing the overall charge by the discounted amount, additionally reducing "the current customary charge screen by 20 percent." Then, CMS will send in the Office of Inspector General and Department of Justice for further legal scrutiny and action.*

15. After noticing actual violations of the FCA, FFCA and Chapter 817, Florida Statutes, Plaintiff communicated his objections to Defendant's billing practices to Collier and Molick.

16. Plaintiff began investigating and researching violations of the FCA, FFCA and Chapter 817 for the purpose of bringing them into compliance with the law.

17. On September 19, 2023, Collier sent the Plaintiff two Excel spreadsheets containing outstanding billing issues. The spreadsheets contained approximately 4800-line items representing denials for credentialing, eligibility, and configuration. It included payments to Medicare and Medicaid. The Plaintiff began researching the denials within the Defendant's systems. Plaintiff could not identify a single Explanation of Benefits (EOB) document for the 4800-line items in the defendants EMR / EHR software, Credible. Plaintiff also confirmed during his review that

Defendant was billing the same services at different rates including Medicare and Medicaid.

18. On September 20, 2023, Kate Brim, Utilization Manager ("Brim") and Plaintiff's subordinate, discussed with Plaintiff her frustrations with the current system and process especially about non-credentialed providers. Brim disclosed that many of the Defendant's providers were not credentialed. Brim and Plaintiff reviewed fifteen different providers of series from an insurance aging report. Nine of the fifteen providers reviewed on the first page of the report, were not properly credentialed and/or non-credentialed, providers were listed on an insurance aging report / screen under the tab labeled (Employee) which references the provider of services. There were numerous additional pages of services rendered whereas Plaintiff is certain additional providers were non-credentialed for services rendered. Brim told the Plaintiff that they found a work-around regarding non-credentialed providers and billing claims for service.

19. Immediately after speaking with Brim, Plaintiff emailed Mounira Ragsdale, LCSW, Chief Administrative Officer, to request access to the SharePoint utilization management data files and folders. This request was made for the purpose of continuing his efforts to investigate violations of FCA and discontinue violations of the FCA.

20. On September 21, 2023, Tina Molick met with the Plaintiff. Plaintiff was instructed to review the accounts receivable. Plaintiff told Molick he could not find any EOB's within the system from the insurance carriers. Molick informed Plaintiff

that the EOB's that the Defendant received at their main office address 4570 Northgate Ct., Sarasota FL., but were thrown away. Plaintiff asked Molick when she wanted to meet with Defendant's Chief Financial Officer to address issues with Defendant's billing practices described in his September 12, 2023 email sent to Molick. Molick replied that Defendant cannot change the way they are billing this year. Plaintiff also disclosed to Molick that he was concerned about the credentialing issues he was seeing.

21. On September 22, 2023, Plaintiff was placed on administrative leave.

22. On September 25, 2023, Plaintiff was terminated.

## COUNT I– FCA PROHIBITED RETALIATION, 31 U.S.C. 3730(h)

23. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 22 as set forth above.

24. As described more particularly above, Plaintiff engaged in lawful acts in furtherance of the FCA when he (a) internally reported the violation of the FCA to Defendant (b) investigated violations of the FCA, and (c) took steps to remedy Defendant's continued violation of the FCA or recommend Defendant discontinuing its violation of the FCA.

25. Defendant was put on notice that litigation was a possibility under the FCA.

26. Plaintiff was terminated by the Defendant because of his lawful acts (protected activity) under the FCA.

WHEREFORE, the Plaintiff, ANDREW GLOWACKI respectfully requests this Court enter a declaratory judgment that Defendant, LIGHTSHARE BEHAVIORAL WELLNESS & RECOVERY, INC. has violated his rights under the False Claims Act and an injunction directing:

(a) Reinstatement of Plaintiff with the same seniority status he would have had but for the retaliation;

(b) Two (2) times the amount of back pay, and interest on the back pay; and,

(c) Compensation for any special damages sustained as a result of the retaliation, including emotional distress damages, litigation costs and reasonable attorneys' fees,

(d) and all other relief available under the Act.

**COUNT II: VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLEBLOWER'S ACT "FWA"**

27. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 22 as set forth above.

28. Section 448.103, Florida Statutes, provides a cause of action for any employee who has been the object of a retaliatory personnel action for objecting to or refusing to participate in any activity, policy, or practice of the employer which violates a law, rule, or regulation. *See* Florida Statutes § 448.102-448.103.

29. As described above, Plaintiff engaged in protected activity under the FWA when he objected to an actual violation of the FCA, FFCA and Chapter 817, Florida Statutes.

30. The Plaintiff was terminated because he engaged in protected activity.

WHEREFORE, Plaintiff, ANDREW GLOWACKI demands judgment in his favor and against the Defendant, LIGHTSHARE BEHAVIORAL WELLNESS & RECOVERY, INC. for damages and relief as follows:

(a) compensatory damages for lost wages, benefits, and any other applicable remuneration;

(b) other compensatory damages as permitted by law;

(c) Reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position or front pay;

(d) Plaintiff's attorneys' fees and costs of this action, pursuant to Florida Statutes Section 448.104;

(e) injunctive relief prohibiting any further retaliatory action as provided under Florida Statutes § 448.103(2)(a); and

(f) any other such relief this Court deems just and proper.

**JURY DEMAND**

31. The Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated this 23rd day of January 2024.

Respectfully submitted,

By: /s/ *Frank M. Malatesta*

FRANK M. MALATESTA, ESQ.
Florida Bar No.: 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Boulevard, Suite 235

Venice, Florida 34285
Telephone No.: (941) 256 - 3812
Facsimile No.: (888) 501-3865
Frank@malatestalawoffice.com
Staff@malatestalawoffice.com
*Counsel for Plaintiff*